

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 9, 2006                   **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMELIA ESPINOSA GENTRY, | § | CASE NO. 05-60728-RLJ-13 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION

The Court considers whether to approve confirmation of the chapter 13 plan filed by the debtor Amelia Gentry ("Gentry") that proposes to pay interest on an unsecured claim of the Internal Revenue Service ("IRS"). The chapter 13 trustee, Walter O'Cheskey, objects to confirmation, contending that the payment of interest on the IRS claim unfairly discriminates against other creditors in violation of section 1322(b)(1) of the Bankruptcy Code.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Background**

The parties stipulated to the basic facts before the Court. Amelia Gentry filed her chapter 13 bankruptcy case on December 21, 2005. Her chapter 13 plan, which she filed on January 30, 2006, provides for payments of $529 per month for sixty months. She has three secured creditors that are paid $35.12, $88.05, and $72.70 per month, respectively. Gentry makes direct (not through the chapter 13 trustee) payments on her mortgage. With respect to the claim of the IRS, Gentry classifies the claim as a priority claim in the amount of $13,921.23, of which $10,772.13 is undisputed. The claim accrues interest at ten percent under the plan; the monthly payment to the IRS is $228.88.

The IRS debt was jointly owed by Amelia Gentry and her former husband, Carl James Gentry. Gentry contends that her obligation to pay the IRS is a "domestic support obligation" under the Bankruptcy Code as she was charged with the responsibility of paying the IRS pursuant to the divorce proceedings between her and her former husband. In this regard, the parties submitted to the Court a copy of their final decree of divorce, which does not specifically reference the debt to the IRS under any of the provisions dealing with the property division or division of debts. Concerning the division of debts, the divorce decree simply states that each party is responsible for any debt secured by property awarded to such party under the terms of the divorce decree and for any debt that was specifically incurred by such party. With respect to undisclosed community property liabilities, the divorce decree states that any undisclosed community property liability not expressly assumed by a party is paid by the party who incurred the liability.

**Discussion**

Gentry contends that she may pay interest on the IRS debt because of its special status as a "domestic support obligation" ("DSO"), a phrase added at section 101(14A) of the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1] Gentry submits that, as a DSO, the debt (i) is a first priority debt under section 507(a)(1) of the Bankruptcy Code, (ii) is defined to include any interest that accrues "under applicable nonbankruptcy law," and (iii) is nondischargeable under section 523(a)(5) of the Bankruptcy Code. As stated, Gentry and the trustee submitted the issues to the Court on stipulated facts. They did not, however, specifically stipulate that the IRS debt is a DSO. The Court does not assume it is.

Gentry argues that "property settlements in a divorce are 'domestic support obligations'" and thus may be separately classified and paid with interest. The Court disagrees. Section 101(14A) defines a DSO as follows:

> The term "domestic support obligation" means a debt that accrues before or after the entry of an order for relief under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is–
> (A) owed to or recoverable by–
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before or after entry of an order for relief under this title, by reason of applicable provisions of–

---

[1] BAPCPA was signed into law by President George W. Bush on April 20, 2005, and is applicable to cases filed on or after October 17, 2005.

>> (i) a separation agreement, divorce decree, or property settlement agreement;
>> (ii) an order of a court of record; or
>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; *and*
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child, or parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt.

It should be noted the conjunctive "and" is used before the last subparagraph (D) indicating Congress's apparent intention that all elements of section 101(14A) be satisfied to meet the definition of a domestic support obligation. *See Bruce v. First Fed. Sav. and Loan Ass'n of Conroe, Inc.*, 837 F.2d 712, 715 (5th Cir. 1988) (The word "and" is therefore to be accepted for its conjunctive connotation rather than as a word interchangeable with "or" except where strict grammatical construction will frustrate clear legislative intent.) While a DSO is a new, expansive concept under the Code, it still must constitute a debt that is in the nature of alimony, maintenance, or support.[2]

The bankruptcy court applies federal law in determining whether a divorce decree creates a debt that is "in the nature of alimony, maintenance, or support." *See Matter of Dennis*, 25 F.3d 274, 278 (5th Cir. 1994); *see also In re Jones,* 9 F.3d 878, 880 (10th Cir. 1993) (ruling that debt may be in the nature of alimony, maintenance, or support under federal bankruptcy law, even though it is not legally qualified as alimony under state law); *Adams v. Zentz,* 963 F.2d 197, 199 (8th Cir. 1992) (determining that neither state law nor the divorce decree characterization of the

---

[2]Section 523(a)(5) of the Bankruptcy Code, prior to its amendment under BAPCPA, provided that a debt for alimony, maintenance, or support owed to a former spouse was nondischargeable. BAPCPA amended section 523(a)(5) to simply provide for the nondischargeability of a domestic support obligation, which, as noted, is defined at section 101(14A) of the Code.

debt is binding on bankruptcy courts).

The Fifth Circuit Court of Appeals has established a non-exclusive list of factors for a bankruptcy court to review when determining whether or not a divorce obligation constitutes alimony, maintenance, or support. *In re Joseph*, 16 F.3d 86, 88 (5th Cir. 1994). Those factors include, but are not limited to, the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their probable future financial needs, and the benefits each party would have received had the marriage continued. *Id*. "The presence of one or more of these factors does not necessarily mean the obligation is one of support nor does the absence of one or more indicate the award is part of a property settlement. Determination of whether support or a property settlement is involved must be made on a case by case basis." *In re Fox*, 5 B.R. 317, 321 (Bankr. N.D. Tex. 1980).

In a chapter 13 plan confirmation, the debtor is the moving party seeking affirmative relief from the court. As the proponent of a Chapter 13 plan, the debtor has the burden of proof at confirmation. *In re Moore*, 319 B.R. 504 (Bankr. S.D. Tex. 2005). "[T]he party responsible for preparing the case for adjudication at the confirmation hearing, for providing the evidence necessary for the Court to make the appropriate findings to confirm a chapter 13 plan, is the debtor. The appropriate time to sustain that burden of proof is the hearing on plan confirmation." *Id*. at 515. *See also In re Ho*, 274 B.R. 867, 883 (B.A.P. 9th Cir. 2002) (debtor has burden of proof on all elements of confirmation, including that "the plan complies with the provisions of this chapter [13] and with the other applicable provisions of this title [11]" and that "the plan has been proposed in good faith and not by any means forbidden by law").

Gentry has not satisfied her burden of proof. She makes the assumption that the 2000 and

2001 tax debt, assigned to her in her divorce, constitutes a domestic support obligation as defined in section 101(14A). Gentry has not, however, satisfied the Court that the debt is actually in the nature of alimony, maintenance, or support. In fact, Gentry indicates that her obligation for the IRS debt is part of a property settlement. Gentry relies on one component of the definition in section 101(14A) and does not address any of the factors established by the Fifth Circuit for consideration in determining whether a debt is in the nature of alimony, maintenance, or support.

## Conclusion

Gentry, in effect, argues that any debt resulting from a divorce proceeding is a DSO. This would essentially write out section 523(a)(15) of the Bankruptcy Code which provides for the nondischargeability of debts other than DSO debts that are incurred in the course of a divorce. *See* 11. U.S.C. § 523(a)(15). The Court will not assume that the IRS debt in this case satisfies the definition of a DSO. No evidence was presented on this question. Gentry had the burden to establish that the debt is a DSO; she failed to satisfy this burden. The DSO designation is the sole justification for separately classifying and paying interest on the IRS debt. The DSO designation has not been established. For this reason alone, the Court must deny confirmation.

The Court further concludes that, even if the IRS debt were deemed a DSO (or the parties were to advise the Court that they agree through stipulation that it is a DSO), payment of the debt under the chapter 13 plan with interest is improper. Section 1322(b)(10), which was added by BAPCPA,[3] states that a plan may

> provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income

---

[3]*See* note 1 *supra*.

>available to pay such interest after making provision for full payment of all allowed claims . . . .

A DSO is among the debts that are not discharged by the chapter 13 discharge. *See* 11 U.S.C. § 1328(a)(2). The plan here does not satisfy the section 1328(b)(10) criteria, which Gentry acknowledges. Gentry's argument that various other provisions of the Code that mention a DSO somehow imbue a DSO with a special status does not alter the plain meaning of section 1322(b)(10). The Court does not decide whether the claim may be separately classified if it is not a DSO. Gentry's arguments in favor of separately classifying the IRS debt were also premised upon the debt being labeled a DSO. If the debt were a DSO, it would certainly be appropriate to separately classify it apart from other unsecured claims.

### End of Memorandum Opinion ###